**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**MIKKI HASTINGS as Personal Representative And SPECIAL ADMINISTRATRIX of the Estate of WILLIS PAUL LE, JR., DECEASED, on behalf of the individual and survival heirs and Wrongful Death Beneficiaries of WILLIS PAUL LE, JR., deceased** **PLAINTIFF**

**V.** **NO. 6:25-CV-06053-SOH**

**MONTANA CARRIERS, INC. et al.** **DEFENDANTS**

**MOTION FOR PARTIAL SUMMARY JUDGMENT**

# EXHIBIT E

IN THE UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF ARKANSAS - HOT SPRINTS DIVISION

CASE NO. 6:25-CV-06053

MIKKI HASTINGS, as personal representative of the Estate of WILLIS PAUL LEE, JR., Deceased, on behalf of the Individual and survival heirs and wrongful death beneficiaries of WILLIS PAUL LEE, JR., Deceased

PLAINTIFF

VS. NO.

MONTANA CARRIERS, INC., ET AL.

DEFENDANTS

* * * * * * * * * * * * * * * * *

DEPOSITION OF **DR. ANTHONY LAMKIN**, taken under oath on **April 15, 2026**, in **Jonesboro, Arkansas**, before Dianne Gibson, CCR, certified court reporter and notary public for the state of Arkansas.

* * * * * * * * * * * * * * * * *

**GIBSON REPORTING SERVICE**
**Dianne Gibson, CCR**
**902 Oriole Drive**
**Jonesboro, AR 72401**

**(870)935-1213 (OFFICE/FAX)**
**(870)219-9049 (CELL)**
**djgibson2@gmail.com**

**DR. ANTHONY LAMKIN,** after first being duly sworn or affirmed, testified as follows:

EXAMINATION BY
MS. HOGGARD:

Q. Dr. Lamkin, will you please state your name and tell me where you work?

A. Anthony Wayne Lamkin, and I work at two hospitals, one at St. Bernards here in Jonesboro and then White River Medical Center in Batesville.

Q. Do you have a separate professional office other than being at those hospitals?

A. Like maybe with like a little case review that I do, I do that at home. I mean, so maybe there's a home office, but I do not do any patient care, things like that.

Q. And you are appearing here today pursuant to a notice of deposition. I'm going to show you and we'll mark it as Exhibit #1 to your deposition.

(COURT REPORTER'S NOTE: Plaintiff's Exhibit #1, Notice of Deposition, marked for identification.)

Q. In this notice of deposition, did you bring any documents with you?

A. I believe we have those, yes, ma'am.

Q. Thank you.

A. Yes, ma'am.
Q. Are there any outside sources that you reviewed in order to reach your opinions?
A. No, ma'am. It's just basically exactly what you said, plus just my personal training and experience.
Q. Well, and I can't look at all your personal training or experience, so I'm trying to determine what all I need to look at to understand.
A. Yes, ma'am, the medical records, yes.
Q. Thank you. And in Opinion #1, it appears to me that a large part of this paragraph is reciting the medical records, sort of that course of treatment?
A. Yes, well, it's just that the patient had the right lower extremity wound and it had been a chronic condition outside of the accident that he had, I mean, since about 2017. And he had been plagued with an infection in that wound for, you know, quite a long time and just laying out that that, you know, was a chronic condition that he had had for some time.
Q. And I'm just trying to make sure I understand Opinion #1. The opinion that you have is that Mr. Lee suffered from a chronic condition of infection and problems with that foot?
A. Yes, ma'am, that was present before the accident.
Q. And that is something that is contained in the

medical records, correct?
A. Yes, ma'am.
Q. And the people with chronic infections dealing with the foot can have that over the course of years and still survive, correct?
A. Yes, ma'am.
Q. Was there any indication that you saw in the medical records that he had a life-threatening infection in his foot?
A. There are episodes, I mean let me make sure, are you talking about before the accident or after?
Q. Before.
A. Okay. There are several admissions where the infection in the foot had caused sepsis and sometimes even bacteremia, and what I mean by that is actual bacteria in the bloodstream and he had to be in the hospital in critical care.
And there are several instances before the accident where the wound on the right lower extremity put his life at risk and, I believe, that's why that they recommended the amputation in March when he was at Baptist.
Q. And you have testified already that he declined or refused to have the amputation, correct?
A. Yes, ma'am.
Q. Is it also fair to say in the medical records that