**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPIRNGS DIVISION**

**MIKKI HASTINGS, AS PERSONAL REPRESENTATIVE AND SPECIAL ADMINISTRATRIX OF THE ESTATE OF WILLIS PAUL LEE, JR., DECEASED, ON BEHALF OF THE INDIVIDUAL AND SURVIVAL HEIRS AND WRONGFUL-DEATH BENEFICIARIES OF WILLIS PAUL LEE, JR., DECEASED** — **PLAINTIFF**

**v.** — **No. 6:25-CV-06053-SOH**

**MONTANA CARRIERS, *ET AL.*** — **DEFENDANTS**

**AFFIDAVIT OF MIKKI HASTINGS**

STATE OF ARKANSAS

COUNTY OF ________________

I, Mikki Hastings, being first duly sworn, depose and state as follows:

I. PERSONAL KNOWLEDGE AND COMPETENCY

1. I am over the age of eighteen (18) years and am competent to make this Affidavit. I have personal knowledge of the facts stated in it, and if called as a witness, I could and would testify competently to these matters.

2. I am the niece of Willis Paul Lee, Jr. (Paul), the decedent in this case. I am also the duly-appointed Personal Representative of the Estate of Willis Paul Lee, Jr.

3. I submit this Affidavit in support of Plaintiff's Response to Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56.

II. MY RELATIONSHIP WITH MY BIOLOGICAL FATHER

4. My biological father was Paul's brother. My biological father was abusive to me during my childhood. My sisters did not have the same experience that I did with our father.

5. As a result of my father's abuse, I moved out of my family home in approximately 1994, when I was 17 years old. I moved into a small house in Gurdon, Arkansas with my daughter. At that time, I was working at Sonic and was still attending school.

6. As an adult, I had a protective order in place against my biological father for several years due to his continued cruelty toward me. There were several years during which I had no relationship with my biological father whatsoever.

III. PAUL BECAME MY FATHER FIGURE

7. Paul was aware, at least in part, that things were different for me at home. I believe this is why he was always there for me.

8. When I moved out on my own at age 17, Paul was also living in Gurdon, Arkansas. During this difficult time in my life, Paul often bought me groceries and helped me stay afloat financially. He was encouraging to me, and I began depending on him as a father figure in my life. I referred to this assistance in my deposition and would have expanded my comments to include the issues with my father and Paul's actions as a father figure to me had anyone followed up with questions that indicated an interest in it. No one did.

9. Approximately one year after I moved out on my own, I met and married my husband, Adam Hastings. Although my life became more stable, we were young and financially struggling. Paul again came to help us but not by giving us money or financial help. He gave Adam a job working on a cleanup crew with him to discreetly help us both to help ourselves.

10. Paul and I did not discuss the particulars of my estrangement from my biological father. I believe Paul thought it was none of his business, and I was concerned the conversation might strain our relationship. I needed to feel cared for by him, and I did not want to jeopardize that.

11. Paul has been my only father figure since approximately 1994, when I first left my family home. His support was not financial. Rather it was the advice, caring, and wisdom a father gives to a daughter that is beyond any particular dollar figure.

IV. PAUL SUPPORTED ME THROUGH MY BIOLOGICAL FATHER'S DEATH

12. When my biological father suffered a stroke and was hospitalized, I had not had a relationship with him in several years due to our estrangement. As the oldest daughter in our family, I have always taken care of things for my sisters, and I was the

one who had to agree to have my father disconnected from life support. This was an extremely difficult decision because of our estrangement.

13. Paul came to the hospital during this time. He told me that he did not know specifically what I had been through over the years, but he knew I had been through something difficult. He told me he did not hold that against me. Instead, he told me he was there for me and that he supported my decision to remove my father from life support.

14. This was one of the most significant moments in our relationship because Paul made it acceptable for me to discuss my past with him more openly.

15. After my biological father passed away, Paul helped pay for the funeral. More importantly, he helped me make it through the receptions and the mourning period. He returned to help me bury my father's ashes when we received them.

V. PAUL AND I SUPPORTED EACH OTHER THROUGH MY GRANDFATHER'S ILLNESS AND DEATH

16. My grandfather, who was Paul's father, lived in Arkansas and suffered a stroke. He was unable to take care of himself. At that time, Paul was living in Memphis, Tennessee. While my grandfather was here in Arkansas, I helped check in on him and kept Paul informed of any concerns I had about his condition.

17. When my grandfather could no longer remain in Arkansas, Paul placed him in a nursing home in Memphis so that Paul could be close to him.

18. During the last four months of my grandfather's life, I stayed with Paul frequently. Paul helped me deal with the hospice situation. We supported each other through my grandfather's passing.

VI. PAUL MOVED BACK TO ARKANSAS TO BE CLOSE TO ME

19. After my grandfather passed away, Paul stayed with his wife Stephanie for a few more years. They moved to Arizona. During that time, Paul and I talked on the phone, but I did not visit him due to the distance.

20. Paul and Stephanie eventually separated. When they did, Paul moved back to our hometown in Arkansas, where he was raised and where I have lived for many years.

21. Paul told me he was coming back to be close to me. He specifically told me that he thought of me as his daughter and that he wanted to spend his later years here near me. I spoke of Paul's return to Arkansas in my deposition, but once again was not

questioned about the depth of our relationship. Had I been so questioned, I would have offered this information.

VII. PAUL WAS AN INTEGRAL PART OF MY FAMILY

22. After Paul returned to Arkansas, we visited regularly. I had a demanding job where I was on call 24 hours a day, seven days a week. Many times when Paul came by, he would visit with Adam and my daughters when I was working. Paul was very good to my children.

23. My children often went out to eat with Paul. One of my daughters would sometimes help clean Paul's apartment, and he would pay her. Another daughter would pick Paul up from doctor's appointments. We were a regular family, and Paul was a critical part of it.

24. Paul and I started doing a small side business together during the summers. We would go to Warren or to a grocery supplier, depending on what was needed. We would buy produce and items like canned jellies, and we would resell them at farmers' stands. Paul had a stand in Delight, and I had mine in Okolona. We would often get shipments together and then split up to sell.

25. The farmers' stand venture never really made money, but it was something Paul and I could do together, and it was special for both of us. I loved those days.

26. During the last few years before Paul's death, we had been working on genealogy together, finding distant cousins and discussing how they fit into our family tree. Paul was the last family member I had on that side of my family. I did not mention this endeavor in my deposition because it would not have been responsive to any question I was asked.

VIII. OUR FATHER-DAUGHTER RELATIONSHIP WAS UNDERSTOOD

27. The nature of our father-daughter relationship was discussed more than once between Paul and me. However, we also had a family tendency not to overly discuss our feelings, so it was mostly understood between us that he was basically my father and had been for many years.

28. Paul often called me "his girl."

29. I loved Paul. My relationship with him was different than any other family member had with him. He was my only father since approximately 1994.

IX. PAUL'S MEDICAL ISSUES

30. Through the course of this litigation, I have discovered that Paul did not tell me about many of his medical issues. It is shocking how many things I am just now learning about. He would tell Adam things, and Adam knew much more than I did about Paul's health.

31. I believe Paul did not share his medical struggles with me because he had seen me struggle emotionally when my biological father was in the hospital and when my grandfather was in hospice. I believe he did not want me to be concerned or to go through that pain again.

32. Paul also knew I was living approximately 3,000 miles away in Alaska at the time of his accident and hospitalization, which may have also factored into his decision not to tell me.

X. FUNERAL ARRANGEMENTS AND BURIAL

33. After Paul's death, I coordinated with Paul's church, the First Assembly of God Church in Gurdon, Arkansas, to arrange his funeral service. The church contacted me within a day or two of Paul's passing and expressed that the church family wanted to hold a service for him. I worked with them to provide a service for Paul and his church family.

34. I was unable to attend Paul's funeral in person. At the time of Paul's death, I was living in Alaska for my employment as a teacher. The cost of an airplane ticket to travel from Alaska to Arkansas for the funeral was over $2,000.00, and I could not afford it.

35. When I was finally able to return home to Arkansas from Alaska, I personally installed a memorial stone for Paul and buried his ashes with my own hands. I buried Paul next to his mother, who was my grandmother, exactly as Paul had asked me to do.

XI. CONCLUSION

36. Paul was, in every meaningful sense, my father. He stepped into that role when I was a teenager and remained in that role until his death. He provided me emotional support and unconditional love throughout my adult life, which is the most important thing a father can do. He helped me financially at my most vulnerable moment. He helped me through the most difficult moments of my life, including my estrangement from and the death of my biological father and the death of my grandfather.

37. The loss of Paul has been devastating to me. I have lost the only father I have ever truly known.

38. The statements made in this Affidavit are true and correct to the best of my knowledge and belief.

FURTHER AFFIANT SAYETH NOT.

MIKKI HASTINGS

SUBSCRIBED AND SWORN to before me, the undersigned Notary Public, on this 5th day of June 2026.

NOTARY PUBLIC

My Commission Expires: July 23, 2034

SHAUNA SONGER
GARLAND COUNTY
NOTARY PUBLIC -- ARKANSAS
My Commission Expires July 23, 2034
Commission No. 00003416