**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**
**HOT SPRINGS DIVISION**

**MIKKI HASTINGS, AS PERSONAL REPRESENTATIVE AND SPECIAL ADMINISTRATRIX OF THE ESTATE OF WILLIS PAUL LEE, JR., DECEASED, ON BEHALF OF THE INDIVIDUAL AND SURVIVAL HEIRS AND WRONGFUL-DEATH BENEFICIARIES OF WILLIS PAUL LEE, JR., DECEASED** **PLAINTIFF**

**v.** **No. 6:25-CV-06053-SOH**

**MONTANA CARRIERS, *ET AL.*** **DEFENDANTS**

## BRIEF IN SUPPORT OF MOTION *IN LIMINE* TO EXCLUDE LOOMING OPINIONS BY DANILE BOWMAN

Plaintiff offers this brief in support of her motion *in limine* to exclude opinions by accident reconstructionist Daniel Bowman regarding "looming."

## INTRODUCTION

Willis Paul Lee, Jr., who was known as Paul, was driving down Interstate Highway 30 near Arkadelphia in his little Dodge pick-up truck when Jagdeep Dhillon rear-ended him in a fully-loaded 18-wheeler, knocked him off the road and into a tree. The collision broke Willis' back and eventually killed him. This suit was filed to recover for the harms and losses caused by that crash.

Defendants intend to offer opinion testimony from their accident reconstructionist expert, Daniel Bowman, that this collision "align[s] with a looming scenario." Ex. 1, Depo of Daniel Bowman at 171. This "sort of" looming opinion is offered even though Bowman is not an expert on human factors by his own admission and only has a basic knowledge of the subject matter from a few seminars and some reading, although he says he has applied human factors concepts in accident reconstructions since he started working in that field. Ex. 1 at 11, 24-25, 204, 214. More

to the point, Bowman candidly admits that he lacks the necessary data to perform a looming analysis in this case. Ex. 1 at 169-172, 206-208.

This testimony should not be allowed. It does not meet the threshold requirements for expert testimony imposed by Fed. R. Evid. 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

**THE EXPERT AND HIS OPINIONS**

Bowman is an engineer by training and education and an accident reconstructionist by experience. Ex. 1 at 6. He has no education in psychology, and no formal academic education in human factors. Ex. 1 at 11. His knowledge of human factors is gleaned from reading articles on the topic and taking continuing education that includes the topic. Ex. 1 at 11, 24-25, 214. He admits that he was excluded from offering human factors opinions by a court but claims he was not going to offer those opinions anyway. Ex. 1 at 21, 48. In cases where human factors is an important issue, he recommends that the party retaining him engage a "dedicated human factors expert" and does not even try to carry that weight. Ex. 1 at 204.

A very brief word about the human factors concept of "looming" is helpful before we move on. "Looming," and specifically the "looming threshold," generally and simply speaking, refers to the point when the driver of a vehicle closing from behind a stopped or slow-moving vehicle in front of him can appreciate the speed of the vehicle in front and begin to take evasive action. See *Manion v. Ameri-Can Freight Sys.*, 2019 U.S. Dist. LEXIS 139421, at *18-19 (D. Ariz. 2019). Experts in the field can calculate what that point is and perform a "looming analysis" to determine to determine whether the driver following the slow-moving vehicle could realistically have avoided colliding with the lead vehicle. A lot more exists in the concept, but that is the overall idea. Obviously, this sort of evidence can be very important in a high-speed, rear-end collision case.

Bowman does not go that far. He doesn't really offer an actual "looming" opinion or looming analysis. The closest he gets is to talk about looming "sort of." He says the "sequence of events" in this accident "is consistent with a vehicle experiencing looming, where if there's no other vehicles in between the two over parts of that duration, especially that last segment, Mr. Dhillon may have been able to see the pickup, but he may not have been able to appreciate how quickly he was closing on the vehicle." Ex. 1 at 171. These circumstances "do align with a looming scenario." Ex. 1 at 171. He's offering this opinion "as a possibility for why he may not have been able to avoid the collision." Ex. 1 at 213.

So, why not perform a true looming analysis, assuming Bowman is qualified to do so? Simple. "I could not quantify it." Ex. 1 at 169. That's because "I don't know how long Mr. Lee was on the brakes, how far he slowed down. So, when the tractor-trailer is getting to the point where it's reaching that looming threshold, based on industry research, I couldn't quantify when any of those positions would be." Ex. 1 at 169. A looming analysis cannot be conducted when the "speeds at impact" and "speeds in the last few seconds" are not known. Ex. 1 at 169. And "since we don't have the speeds" of either vehicle "as Mr. Dhillon's approaching that looming threshold distance, we can't really quantify it." Ex. 1 at 171. Nevertheless, Bowman posits that he wants to present this case as one that "align[s] with a looming scenario. Ex. 1 at 171.

## ARGUMENT

### 1. The *Daubert* Standard.

The general contours of the *Daubert* analysis are by now familiar. *Daubert* held that the Federal Rules of Evidence govern the admissibility of evidence and recognized that the "general acceptance" test for the admissibility of scientific evidence that was pronounced in *Frye v. U.S.*, 54 App. D.C. 46, 293 F. 1013 (1923), had been superseded by the Federal Rules of Evidence.

*Daubert*, 509 U.S. at 586-87. The United States Supreme Court noted that the "rigid standard" in *Frye* would be at odds with the Federal Rules' liberal thrust and their general approach of relaxing the traditional barriers to "opinion" testimony. *Id*. at 588-89. The Court later extended the holding in *Daubert* essentially to all expert testimony, including technical and engineering experts. *Kumho Tire Co., Ltd. v Carmichael*, 526 U.S. 137 (1999).

*Daubert* touched on the standards for evaluating an expert's methodology. *Daubert*, 509 U.S. at 592-93. The Supreme Court charged trial courts with undertaking a preliminary assessment of whether the reasoning or methodology underlying expert testimony is valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Ibid*. The Court noted that many factors may apply and no definitive checklist exists. *Ibid*.

The familiar *Daubert* factors are:

1. The expert's credentials;
2. Whether the expert's methodology has been subject of peer review;
3. Potential error rate;
4. Standards;
5. General acceptance in the scientific community.

The *Daubert* standard is now reflected somewhat explicitly in the text of Rule 702, which reads,

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702. Thus, the Court's "gatekeeping function," Fed. R. Evid. 702, Advisory Committee Comments, 2000 Amendment, inquires as to whether the expert is qualified to express the opinions given, the testimony is relevant and will assist the trier of fact in understanding the evidence or deciding a fact in issue, and the opinions are formed in a reliable fashion.

The Supreme Court cautioned trial courts that the factors are not exhaustive, and that they must be applied in a flexible manner. *Daubert*, 509 U.S. at 594. The Court noted the capabilities of the jury and the adversary system generally as the traditional and appropriate means of attacking shaky but admissible evidence. *Ibid.* The adversarial system and its tools are safeguards against pseudoscience, rather than wholesale exclusion where the basis of scientific testimony meets the standards of Rule 702. *Ibid.*

The Court counseled that trial courts should focus "on principles and methodology, not on the conclusions they generate." *Id.* at 595. And while subsequent precedent does allow trial courts to delve into the "analytical gap between the data and the opinion offered," *Gen. Elect. Co. v. Joiner*, 522 U.S. 136, 146 (1997), trial courts are not empowered "to determine which of several competing scientific theories has the best provenance." *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998). "*Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct." *Ibid*. But still the proponent of the evidence must show that "the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion." *Ibid*; see also *United States v. Vargas*, 471 F.3d 255, 265 (1st Cir. 2006). *Daubert* aims "to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire,* 526 U.S. at 152.

As the First Circuit Court of Appeals wrote in *Milward v. Acuity Specialty Prods. Group, Inc.*, 639 F.3d 11 (1st Cir. 2011),

> So long as an expert's scientific testimony rests upon "'good grounds,' based on what is known," *Daubert*, 509 U.S. at 590, it should be tested by the adversarial process, rather than excluded for fear that jurors will not be able to handle the scientific complexities, *id.* at 596. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.*; see also *Currier v. United Techs. Corp.*, 393 F.3d 246, 252 (1st Cir. 2004).

*Id.* at 15. In other words, so long as an expert can demonstrate that he reached his conclusions in a minimally-reliable manner, the opinion can be given to the jury and be tested by way of the strong tools the adversarial system places at the lawyer's disposal.

Of course, opinions cannot be based on speculation. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800-01 (6th Cir. 2000). And assumptions must be supported by record evidence. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 481-82 (6th Cir. 2008). But, to paraphrase the Sixth Circuit, mere weaknesses in the factual basis of an expert's opinion bear on the weight of the evidence rather than its admissibility. *McLean*, 224 F.3d at 801 (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 442)).

**2. Bowman's "sort of" looming opinion should be excluded.**

***a. Bowman is not qualified.***

We experience a bit of the fabled chicken-and-egg problem here. Which came first, Bowman's lack of qualification to express and apply a looming opinion or the unreliable and distorted opinion he expressed? In all candor, one suspects that the lack of qualifications led to the defective opinion. As they say, a little knowledge can be very dangerous, and Bowman has just enough knowledge about human factors to end up with this distorted opinion. The opinion itself is evidence of the lack of qualifications.

Bowman admits that he lacks the necessary information to perform a looming analysis. But then he proceeds to offer a stripped-down version of a looming opinion that is essential meaningless. The case fits a "looming scenario" he says. The "circumstances" may mean that looming was a problem. He cannot quantify it, and he cannot add any meat to this skeleton, but he proposes to introduce the concept into the case with no basis for this "looming sort of" concept.

A human factors expert, one trained and educated in the discipline, would not venture such a stripped-down version of the concept. Only one with just enough knowledge of the field to be dangerous would. Qualifications mean something. One thing they mean is that the person possessing them knows the limits of what he can and cannot do. Bowman betrays his lack of qualifications by venturing an opinion at odds with the expertise necessary to express a looming opinion.

This conclusion is supported by his training and education on the topic. He has read a lot of material on it. And he's been to a seminar. But he has no training in psychology and no formal, in-depth education on human facts or looming. One court preemptively precluded him from offering human facts testimony.

This Court should do the same. Human factors is an expertise all its own. It is not something those with expertise in other areas can dabble in and then take the witness stand as an "expert." Bowman dabbles in human factors, but he is not a qualified expert.

***b. Bowman's methodology is unreliable and unsound.***

We will not belabor the point already made here. Bowman admits that he lacks the most basic information necessary to perform a looming analysis. He does not know the closing speeds of the two vehicles, and he does not know the speeds at impact. Both are ***necessary*** to be able to perform a useful, complete, competent looming analysis.

Bowman's idea that he can introduce the concept of looming into the case as a "possible" explanation as to why Dhillon ran into Lee instead of avoiding him as other cars and trucks passing him had done does not save the testimony. That notion has another name, a name anathema to the Rules of Evidence: ***speculation***. Experts cannot speculate any more than any other witness can. Just because this collision is a rear-end collision between a slower-moving and a fast-moving vehicle does not mean an expert can speculate that what happened ***might have been*** looming.

Indeed, to allow Bowman to do so would run counter to Fed. R. Evid. 403. The testimony has virtually no probative value. No one knows whether the looming threshold was so small that avoidance was not possible (although we do know that other vehicles had passed Lee without incident). We lack the necessary data to come to that conclusion. Yet, once the idea of looming is planted in the jury's mind as a "possibility" the infection is seeded and may be fatal. That is strong unfair prejudice. Before an expert witness is allowed to introduce an idea as prejudicial as looming is to a rear-end collision case, the minimum that should be required is that the basic data necessary to conduct the analysis should exist. It does not here.

This "sort of" looming opinion has no basis in science or in engineering. It is speculative and unfairly prejudicial in the extreme. The Court should exclude it.

**CONCLUSION**

Bowman offers an opinion with no basis in a field where he lacks qualification. This Court should not allow him to do so.

Respectfully submitted,

BY: *Bryce Brewer*

Bryce Brewer (ABN 2002013)
RAINWATER, HOLT & SEXTON, P.A.
P.O. Box 17250
Little Rock, AR 72222
(501) 868-2500

(501) 868-2505 - facsimile
bbrewer@rainfirm.com

**CERTIFICATE OF SERVICE**

I, Bryce Brewer, do hereby certify that a true and correct copy of the above and foregoing pleading has been served upon the following attorneys of record via electronic mail, this 22nd day of June 2026.

Jeffrey W. Puryear
PURYEAR, MAYFIELD & MCNEIL, P.A.
3000 Browns Lane
Jonesboro, AR 72401
(870) 932-0900
jpuryear@pmmlawfirm.com

*Bryce Brewer*
Bryce Brewer